1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NARPAT BHANDARI AND CHANDRA BHANDARI, | Case No.: C 12-04533 PSG |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| CAPITAL ONE, N.A., et al., | **(Re: Docket No. 6)** |
| Defendants. | |

In this mortgage foreclosure action, Plaintiffs Narpat Bhandari and Chandra Bhandari (collectively, "Plaintiffs") seek to prevent foreclosure of their home and move for preliminary injunction. Defendants Capital One, N.A. ("Capital One"), Chevy Chase Bank FSB ("CCB"), and Mortgage Electronic Registration Systems, Inc. (collectively, "Defendants") oppose the motion. On October 16, 2012, the parties appeared for hearing. After considering the parties' briefing and arguments, the court is not persuaded that a preliminary injunction is warranted. For the reasons discussed below, the motion for preliminary injunction is DENIED.

## I.  BACKGROUND

### A. Factual History

In 1996, Plaintiffs obtained a loan from Bank of America on real property located at 14530 Deer Park Court, Los Gatos, California (the "Property"). Plaintiffs signed a Deed of Trust against

Case No.: C 12-04533 PSG
ORDER

**United States District Court**
For the Northern District of California

the Property to secure a Promissory Note in the amount of $1 million.[1] Between December 27, 1997 and July 28, 2004, Plaintiffs refinanced their loan with six first mortgages and three second mortgages.[2]

On November 14, 2005, Plaintiffs refinanced their home loan and signed a Deed of Trust against the Property to secure a Promissory Note in the amount of $4,570,200.[3] Plaintiffs also signed a Subordination Agreement against the Property in the amount of $950,000.[4]

In April 2008, CCB, Capital One's predecessor-in-interest, granted Plaintiffs a loan modification.[5] In July 2008, November 2008, and April 2009, Plaintiffs again sought loan modifications but CCB denied all of their requests.[6]

Plaintiffs failed to make the monthly minimum payments and as a result, a Notice of Default was recorded on June 3, 2009.[7] Plaintiffs owed CCB $134,315.

In 2009, Capital One acquired CCB. In July 2009, Plaintiffs requested a new loan modification and were advised by Bill Callahan of Capital One that consideration of their request would not occur until they stopped making monthly payments.[8]

On September 12, 2009, Plaintiffs recorded a loan modification agreement.[9] The loan modification occurred when the loan was set to become a fully amortizing one because the unpaid principal balance had reached the maximum allowed. The new loan modification agreement

---

[1] *See* Request for Judicial Notice ("Request"), ¶ 1, Exh. A.

[2] *See id.,* ¶ 2, Exh. B.

[3] *See id.,* ¶ 3, Exh. C.

[4] *See id.,* ¶ 4, Exh. D.

[5] Declaration of Alissia Brunson-Matthews in Support of Defendants Capital One, Chevy Chase and MERs' Opposition to Plaintiffs' Request for Preliminary Injunction ("Brunson-Matthews Decl."), ¶ 4.

[6] *See* Brunson-Matthews Decl. ¶¶ 4-6.

[7] *See* Request, ¶ 6, Exh. F.

[8] Declaration of Narpat Bhandari in Support of Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("Bhandari Decl."), ¶ 5.

[9] *See* Request, ¶ 5, Exh. E.

2

Case No.: C 12-04533 PSG
ORDER

allowed for a new maximum – 115 percent of the original loan amount totaling $5,255,730. Under the loan modification agreement, Plaintiffs agreed to make minimum monthly payments of $16,749.65.

On July 8, 2009, a Substitution of Trustee was recorded, substituting TD Service Company.[10] In November 2009, Capital One advised Plaintiffs that they did not qualify for a new loan modification.[11] On December 9, 2009, a Notice of Trustee's Sale was recorded.[12] Plaintiffs owed Capital One $5,394,589.[13] A trustee's sale of the Property was scheduled to be held on December 29, 2009.[14]

In December 2009, Plaintiffs paid Capital One $175,000 pursuant to a forbearance agreement.[15] At that time, Plaintiffs also tendered a document entitled, "RESPA, Qualified Written Request ("QWR"), Complaint, Dispute of Debt and Validation of Debt Letter."[16] On January 21, 2010, Capital One responded to Plaintiffs' QWR.[17]

In February 2010, Plaintiffs requested a new loan modification and provided Capital One with all of the requested documents.[18] Narpat Bhandari spoke with Lubeena Khan of Capital One who advised him that "you do not need to worry, you will be approved for modification."[19]

---

[10] See Request, ¶ 7, Exh. G.

[11] See Bhandari Decl., ¶ 7.

[12] See Request, ¶ 8, Exh. H.

[13] See id.

[14] See Bhandari Decl., ¶ 7.

[15] See id. at ¶ 8.

[16] See Supplemental Declaration of Alissia Brunson-Matthews ("Brunson-Matthews Suppl. Decl."), ¶ 10.

[17] See id.

[18] See Bhandari Decl., at ¶¶ 9-10.

[19] See id. at ¶ 11.

3

Case No.: C 12-04533 PSG
ORDER

On April 26, 2010, Capital One denied Plaintiffs' request for a new loan modification because they did not meet the requisite income criteria.[20] A trustee's sale of the Property was scheduled to be held on May 17, 2010.[21]

To avoid foreclosure, Plaintiffs agreed to pay Capital One $93,000 before May 15, 2010 and to make monthly payments of $28,240.17 for fifteen months pursuant to another forbearance agreement.[22] Plaintiffs believed that the forbearance agreement reflected an understanding that Capital One would modify their loan and re-set the monthly payments.[23] Carl Locke of Capital One confirmed to Plaintiffs that pursuant to the forbearance agreement Capital One would (1) modify the loan and waive any default existing prior to the forbearance agreement; (2) reinstate the loan on its original terms; (3) remove the Notice of Sale on the Property; and (4) after August 2011, their monthly payments would be $6,000 -7,000.[24]

From May 2010 to August 2011, Jennifer Matthews, Tracey Thompson, and Karen Gustavson from Capital One all provided assurances to Plaintiffs that after the term of the forbearance agreement ended, the monthly payments of $12,667.34 would be reduced by half based on a new interest rate of three percent.[25]

In October 2010, Plaintiffs' next request for a loan modification was denied on the grounds that Plaintiffs' liquid assets exceeded the maximum allowable amount under any modification plan.[26] On October 22, 2010, a Rescission of Notice of Default was recorded.[27]

---

[20] *See* Brunson-Matthews Decl., ¶ 10, Exh. 3.

[21] *See* Bhandari Decl., ¶ 14.

[22] *See id.*

[23] *See* Bhandari Decl., ¶ 14.

[24] *See id.*

[25] *See id.* at ¶ 15.

[26] *See* Brunson-Matthews Decl., ¶ 11.

[27] *See* Request, ¶ 9, Exh. I.

4

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

On November 22, 2010, Capital One sent Plaintiffs a letter explaining how the bank had calculated their mortgage payments and principal.[28]

Following Plaintiffs' next request for a loan modification in May 2011, Capital One denied it because Plantiffs' liquid assets exceeded the maximum allowable amount for any modification plan.[29] Plaintiffs' request for an exception was similarly denied.[30]

In October 2011, Capital One offered Plaintiffs a new repayment plan.[31] Plaintiffs, however, did not make any payments under it.[32]

In December 2011, Capital One offered Plaintiffs a new repayment plan but Plaintiffs later advised Capital One they could not afford the proposed payments under the repayment plan; instead, they requested a new loan modification.[33]

In March 2012, Plaintiffs requested a new loan modification and Capital One sent them a new package.[34]

In April 2012, Plaintiffs advised Capital One that they wanted to proceed with a short sale of the Property and sought to postpone a trustee's sale.[35] Capital One advised Plaintiffs that the trustee's sale would not be postponed until a short sale offer had been made and accepted.[36]

On May 11, 2012, an Assignment of the Deed of Trust and a Notice of Default was recorded.[37]

---

[28] *See* Brunson-Matthews Decl., ¶ 12, Exh. 4.

[29] *See* Brunson-Matthews Decl., ¶ 13.

[30] *See id.*

[31] *See* Brunson-Matthews Suppl. Decl., ¶ 13.

[32] *See id.*

[33] *See* Brunson-Matthews Decl., ¶ 14.

[34] *See id.* at ¶ 15.

[35] *See id.* at ¶ 16.

[36] *See id.*

[37] *See* Request, ¶¶ 10-11, Exhs. J, K.

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

1    On July 2, 2012, Plaintiffs provided Capital One with a new loan modification package,

2    including all requested documents.[38]

3    On July 5, 2012, a Substitution of Trustee was recorded.[39] On August 7, 2012, The Notice

4    of Trustee's Sale was recorded.[40]

5    On July 27, 2012, Plaintiffs' counsel, Mahesh Bajoria ("Bajoria"), requested on behalf of

6    his clients a breakdown of monthly mortgage payments.[41]

7    On August 29, 2012, Capital One denied Plaintiffs' request for a new loan modification

8    because their liquid assets exceeded the maximum allowable amount for any modification plan.[42]

9    A trustee's sale was scheduled to be held on September 4, 2012.[43]

10    On September 20, 2012, Capital One denied Plaintiffs' request for a new loan modification

11    because their liquid assets exceeded the maximum allowable amount for any modification plan.[44]

12    As of October 4, 2012, Plaintiffs owe $362,520.32 on their home loan.[45]

13    **B. Procedural History**

14    Plaintiffs filed this action on August 24, 2012 in Santa Clara Superior Court. The complaint

15    alleges claims for: (1) Holder in Due Course; (2) Fraud; (3) Breach of Oral and Written Contracts;

16    (4) Civil Conspiracy; (5) RESPA; (6) violation of Equal Credit Opportunity Act; (7) Breach of the

17    Implied Warranty of Good Faith and Fair Dealing; (8) Rescission/Cancellation; (9) UCL; (10)

18    Breach of Fiduciary Duty; (11) Quiet Title; (12) Promissory Estoppel; (13) Declaratory or

19    [38] *See* Brunson-Matthews Decl., ¶ 17.

20    [39] *See* Request, ¶ 12, Exh. L.

21    [40] *See* Request, ¶ 13, Exh. M.

22    [41] *See* Declaration of Mahesh Bajoria in Support of Ex Parte Application for Temporary Restraining
23    Order ("Bajoria Decl."), ¶ 7.

24    [42] *See* Brunson-Matthews Decl., ¶ 17, Exh. 5 (Capital One's letter confirming denial of Plaintiffs'
      request for a new loan modification dated August 31, 2012).

25    [43] *See* Bhandari Decl., ¶ 25.

26    [44] *See* Brunson-Matthews Decl., ¶ 18, Exh. 6 (Capital One's letter confirming denial of Plaintiffs'
27    request for a new loan modification dated October 4, 2012).

28    [45] *See* Brunson-Matthews Decl., ¶ 19.

6

Case No.: C 12-04533 PSG
ORDER

Injunctive Relief; and (14) Accounting. On August 29, 2012, Defendants removed the case to federal court.

On August 31, 2012, Plaintiffs moved for, and the court granted, a temporary restraining order.[46] On September 7, 2012, the parties stipulated to continue the hearing on Plaintiffs' motion for preliminary injunction explaining that they were exploring loan modification.[47] Notwithstanding those efforts, however, Defendants filed an opposition to Plaintiffs' motion for preliminary injunction.[48] On October 9, 2012, Plaintiffs filed their reply defending only the following claims: (1) Promissory Estoppel; (2) Breach of the Covenant of Good Faith and Fair Dealing; and (3) RESPA.[49] Based on Plaintiffs' reply, the court assumes that Plaintiffs are no longer pursuing the balance of their claims.

## II.  LEGAL STANDARDS

The issuance of a preliminary injunction is committed to the discretion of the district court.[50] A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[51] "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'"[52] Following *Winter,* the Ninth Circuit made clear that "to the extent [its] cases have suggested a lesser standard, they are no longer controlling or even viable."[53]

---

[46] *See* Docket No. 11.

[47] *See* Docket No. 13.

[48] *See* Docket No. 20.

[49] *See* Docket No. 26.

[50] *See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly,* 572 F.3d 644, 651 (9th Cir. 2009).

[51] *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008).

[52] *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009 (citing *Winter,* 555 U.S. at 20).

[53] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009).

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

### III.  DISCUSSION

**A.  Request for Judicial Notice**

Defendants request judicial notice of the following: foreclosure-related documents recorded in the Santa Clara County Recorder's Office (Exhs. A-M). Plaintiffs do not object.

Defendants have not requested that the court take notice of disputed facts within the documents, and the court will not rely on facts contained therein that reasonably may be subject to dispute.[54] The authenticity of the foreclosure-related documents is not in dispute and may be verified by resort to the public record.[55] Defendants' request for judicial notice is GRANTED as to all of those documents.

**B.  Motion for Preliminary Injunction**

**1.  Likelihood of Success on the Merits**

**a.  Promissory Estoppel**

Plaintiffs contend that the forbearance agreement evidences Capital One's promise to them to suspend further foreclosure proceedings as long as Plaintiffs complied with the terms of the agreement and the agreement remained in effect. Plaintiffs also contend that on May 12, 2010, Capital One confirmed to them that completion of the forbearance agreement would reinstate the loan and that an adjustment of it would not be necessary during the effective term of the agreement. Defendants also promised that Plaintiffs' compliance with the agreement would be reported favorably on their credit report. After the effective term of the forbearance agreement ended, Defendants nevertheless proceeded with foreclosure proceedings against the Property.

Defendants first respond that Plaintiffs' inability to tender full payment on the loan is fatal to their motion. Under well-established California law, debtors must make a valid and viable tender

---

[54] *See Lee v. City of Los Angeles,* 250 F.3d 668, 689 (finding the district court erred in relying on disputed facts contained within documents that otherwise were the proper subject of judicial notice). *See also* Fed. R. Evid. 201(b).

[55] *See* Fed. R. Evid. 201(b)(2).

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

1   of their full outstanding indebtedness.[56] By failing to make such a tender, Plaintiffs lack standing to

2   ask for relief in equity when they themselves have not acted equitably.

3          As for the promissory estoppel claim, Defendants argue that it fails for many reasons.

4   Plaintiffs are unable to establish that Capital One made them a promise not to foreclose on the

5   Property. And even if they could establish such a promise was even made, the claim nevertheless

6   fails because under California law, the statute of frauds requires that any agreement for a purchaser

7   of real property to pay an indebtedness secured by a mortgage or deed of trust upon property must

8   be in writing. The forbearance agreement itself contradicts Plaintiffs' claims because it plainly

9   states that: "This Agreement May Not Reinstate the Loan" and the agreement "shall not be

10  construed as a discontinuance of the foreclosure action by the Lender." Any purported oral

11  representations by Capital One personnel to Plaintiffs are expressly contradicted by both the Deed

12  of Trust and the express language of the forbearance agreement. Defendants also point out that

13  Plaintiffs have not established that they changed their position in reliance on any of Capital One's

14  purported representations.

15         The court agrees with Defendants but only in part. As for Defendants' first argument that

16  Plaintiffs' motion fails because they have not tendered the full amount of the loan, courts have

17  recognized various exceptions to the tender rule.[57] Under these circumstances, the court cannot find

18  error in Plaintiffs' failure to allege compliance with the tender rule.

19         As for the claim of promissory estoppel, however, the court is not convinced that based on

20  this record that Plaintiffs have established that Capital One ever made them any clear and

21  unambiguous promise beyond the terms of the forbearance agreement. "[A] promise is an

22  [56] *See, e.g., Abdallah v. United Savings Bank,* 43 Cal. App. 4th 1101, 1109 (1996); *FPCI Re-Hab
    01 v. E&G Invs.,* 207 Cal. App. 3d 1018, 1021 (1989); *Gaffney v. Downey Sav. & Loan,* 200 Cal.
23  App. 3d 1154, 1165 (1994); *Karlsen v. American Savings & Loan Ass'n,* 15 Cal. App. 3d 112, 117
    (1971); *Gavina v. Smith,* 25 Cal. 3d 501, 505-506 (1944); *Sipe v. McKenna,* 88 Cal. App. 2d 1001,
24  1006 (1948).

25  [57] *See Tamburri v. Suntrust Mortg., Inc.,* No. C-11-2899-EMC, 2011 WL 6294472, at *4-5 (N.D.
    Cal. Dec. 15, 2011) (finding multiple "exceptions and qualifications counsel against a blanket
26  requirement of the tender rule at the pleading stage" based on a review of state and federal case
    law). *See also Ogilvie,* 2012 WL 3010986, at *6 (declining to apply the tender rule at the early
27  pleading stage); *ING Bank v. Ahn,* No. C-09-995-THE, 2009 WL 20893965, at *2 (N.D. Cal. July
    13, 2009 (same).

28

9

Case No.: C 12-04533 PSG
ORDER

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

indispensable part of the doctrine of promissory estoppel. The cases are uniform in holding that this doctrine cannot be invoked and must be held inapplicable in the absence of a showing that a promise has been made upon which the complaining party relied to his prejudice."[58] The promise must be "clear and unambiguous in its terms."[59] "To be enforceable, a promise need only be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages."[60] "[A] promise that is vague, general or of indeterminate application is not enforceable."[61] The express terms of the forbearance agreement are unambiguous in stating that the loan would not be reinstated and that the agreement could not be construed as a discontinuance of the foreclosure action. While there is some ambiguity as to certain oral representations made by Capital One representatives to Plaintiffs that arguably contradict the express terms of the forbearance agreement, their promises are far from clear and unambiguous. The alleged statements by Capital One personnel appear on their face to be speculative and evidence that someone, other than themselves, was making the final decision regarding loan modification. In addition, unlike plaintiffs in *Garcia v. World Savings, FSB,*[62] Plaintiffs here cannot establish any detrimental reliance. Plaintiffs allege that from May 2010 to August 2011, Capital One representatives made reassurances to Plaintiffs that their loan would be modified but in both October 2010 and May 2011, Capital One informed Plaintiffs, officially and repeatedly, that their loan would not be modified because their liquid assets exceeded the maximum allowable under any modification plan. The court therefore is not persuaded that Plaintiffs have established a likelihood of success on the promissory estoppel claim.

---

[58] *Div. of Labor Law Enforcement v. Transpacific Transp. Co.,* 69 Cal. App. 3d 268, 277, 137 Cal. Rptr. 855 (1977).

[59] *Laks v. Coast Fed. Sav. & Loan Ass'n,* 60 Cal. App.3d 885, 890, 131 Cal. Rptr. 836 (1976).

[60] *Garcia v. World Sav. FSB,* 183 Cal. App. 4th 1031, 1045, 107 Cal. Rptr. 3d 683 (2010).

[61] *Aguilar v. Int'l Longshoremen's Union Local No. 10,* 966 F. 2d 443, 446 (9th Cir. 1992) (internal citations omitted).

[62] 183 Cal. App. 4th at 1041-1043.

10

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

1

### b.  Breach of the Covenant of Good Faith and Fair Dealing

2  Plaintiffs contend that Defendants breached the covenant of good faith and fair dealing by

3  failing to modify Plaintiffs' home loan despite their many promises to the contrary. At every turn,

4  Plaintiffs endeavored to comply with Defendants' demands for information and documents.

5  Despite Plaintiffs' repeated requests for an accounting, Defendants declined to respond and explain

6  details related to fifteen monthly payments of $28,240.17, a down payment of $93,000, and

7  promises that their monthly payments would be reduced to $6,000-7,000 per month.

8  Defendants respond that the operative agreement governing this claim is the Deed of Trust.

9  Because Plaintiffs are in default, the Deed of Trust authorizes the commencement of non-judicial

10  foreclosure proceedings against them.

11  While the court is not persuaded that Plaintiffs have established a likelihood of success on

12  this claim, Defendants' contention that the claim relates to the Deed of Trust appears incorrect.

13  Plaintiffs allege that Defendants made numerous promises to them to modify the loan. More

14  problematic than anything else, however, is Plaintiffs' failure to identify the operative agreement

15  from which their covenant of good faith and fair dealing claim arises. Based on Plaintiffs'

16  declaration, it appears that the numerous promises that they reference include the oral agreements

17  made by Capital One representatives. Putting aside the fact that none of these oral representations

18  satisfy the statute of frauds under California law, the allegations as plead, do not establish a claim

19  for breach of the covenant of good faith and fair dealing. As a result, Plaintiffs have not established

20  a likelihood of success on this claim.

21

### c.  Violation of Real Estate Settlement Procedures Act ("RESPA")

22  Plaintiffs allege that Defendants violated RESPA when they failed to timely respond to

23  their QWR. Under RESPA, Defendants were obligated to acknowledge receipt of the request

24  within 20 days and to respond substantively to the request within 60 days. Defendants did neither.

25

26

27

28

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As a result, Plaintiffs may have paid more than was actually owed and they have suffered negative consequences to their credit reports.

Defendants respond that Plaintiffs' RESPA claims, one against CCB and the other against Capital One, both fail. With respect to their claim against CCB, whether Plaintiffs allege a RESPA claim under 12 U.S.C. Section 2605(b) or (c) or 12 U.S.C. Sections 2607 or 2608, they are time-barred. CCB's loan to Plaintiffs originated in November 2005 and a RESPA claim under 12 U.S.C. Section 2605(b) or (c) is subject to a three-year statute of limitations. To the extent that Plaintiffs allege a RESPA claim under 12 U.S.C. Sections 2607 or 2608, it is subject to a one-year statute of limitations.

With respect to Capital One, Plaintiffs allege that it failed to respond to the QWR dated June 23, 2009.[63] Defendants dispute that Plaintiffs have established that the QWR was ever sent or received. And even assuming that the QWR was sent, Defendants argue that it is not valid because the request is unrelated to servicing or servicing errors of the loan. Defendants argue that Plaintiffs' request does not fall within the meaning of "servicing" because "servicing" relates to "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."[64] Defendants also dispute that the QWR is valid one because Plaintiffs did not state why they believed that the account was in error, they did not provide sufficient detail to the servicer regarding other information sought by the borrower, and they did not allege actual damages.[65]

---

[63] *See* Docket No. 1 (Exhibit C to the complaint is an unsigned QWR dated November 10, 2009).

[64] 12 U.S.C. Section 2605(i)(3).

[65] *See, e.g., Phillips v. Bank of America Corp.,* No. C 10-0400 JF (HRL), 2010 WL 1460824, at *4 (N.D. Cal. Apr. 9, 2010).

12

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

1    A request must meet certain criteria in order to constitute a QWR under 12 U.S.C. §2605

2    (e). A QWR requests information relating to the servicing of a loan.[66] It is something other than

3    notice on a payment coupon or other payment medium, supplied by the servicer.[67] It must provide

4    sufficient information for the servicer to identify the name and account of the borrower.[68] Finally,

5    it must either include a statement of the reasons for the borrower's belief, to the extent applicable,

6    that the account is in error or provide sufficient detail to the servicer regarding other information

7    sought by the borrower.[69]

8        Under RESPA, loan servicers

9
        ha[ve] a duty to respond to a borrower's inquiry or 'qualified written request.'
10       12 U.S.C. § 2605(e). A qualified written request is a written correspondence
         that enables the servicer to identify the name and account of the borrower.
11       12 U.S.C. §2605(e)(1). It also either includes a statement describing why
         the borrower believes that the account is in error or provides sufficient detail
12       to the servicer regarding other information sought by the borrower. *Id.* The
         loan servicer is required to respond by making appropriate corrections to the
13       borrower's account, if necessary and, after conducting the investigation,
         providing the borrower with a written clarification or explanation.
14       12 U.S.C. §2605 (e)(2). [70]

16       The court finds that Defendants' arguments are ultimately persuasive. Plaintiffs' RESPA

17   claim against CCB appears to be time-barred. As for the claim against Capital One, Defendants do

18   not appear to dispute that they never responded to Plaintiffs' purported June 23, 2009 QWR. While

19   the court is not persuaded by Defendants' arguments that Plaintiffs' QWR does not relate to

20   servicing or servicing errors, the court agrees that the QWR lacks specific reasons why Plaintiffs

21   believed that their account was in error and any actual damages. The QWR is a request by Century

22   21 Financial Services and addressed to Capital One/CCB seeking to audit, and have Capital One

---

[66] 12 U.S.C. §2605(e)(1)(A).

[67] 12 U.S.C. § 2605(e)(1)(B).

[68] 12 U.S.C. § 2605(e)(1)(B)(i).

[69] 12 U.S.C. § 2605(e)(1)(B)(ii).

[70] *Keen v. Amer. Home Mortgage Servicing, Inc.*, 664 F.Supp.2d 1086 (E.D. Cal. 2009).

13

Case No.: C 12-04533 PSG
ORDER

audit, the accounting and servicing of the Bhandaris' mortgage. The QWR merely states: "They are disputing the validity of the current debt you claim that is owed."[71] Plaintiffs do not indicate whether subsequent correspondence was ever provided to Capital One specifying why the account may have been error or the results of their own audit. Under these circumstances, Plaintiffs have not established a likelihood of success on these claims.

Because Plaintiffs have not established a likelihood of success on any of their claims, this factor weighs in favor of Defendants.

### 2. Irreparable Harm

Plaintiffs may suffer irreparable harm if Defendants commence foreclosure proceedings on the Property and they are forced to vacate their home.[72] Plaintiffs state that their down payment and the value of any improvements they have made on their home will be lost.

This factor weighs in favor of Plaintiffs.

### 3. Balance of Equities

Based on the above, Plaintiffs cannot establish that the balance of equities tip in their favor. Plaintiffs have not established the likelihood or prevailing on any of their claims.[73] This factor weighs in favor of Defendants.

### 4. Injunction is in the Public Interest

Except for demonstrating that Plaintiffs will be irreparably harmed if an injunction is not granted and they are forced to vacate from their home, Plaintiffs have not established that any of the other factors weigh in their interest. Plaintiffs thus have not shown that granting an injunction here is in the public interest.[74] This factor weighs in favor of Defendants.

---

[71] *See* Docket No. 1, Ex. C.

[72] *See Mesde v. American Brokers Conduit,* No. C 09-02418, 2011 WL 1883706, at *2 (N.D. Cal. Jun. 30, 2009) ("Foreclosure may constitute irreparable harm"). *See also Sundance Land Corp. v. Comty First Fed. Sav. & Loan Ass'n,* 840 F.2d 653, 661 (9th Cir. 1988) (holding that foreclosure of real property constitutes irreparable harm).

[73] *See, e.g., Beutel v. Wells Fargo Bank, N.A.,* No. 11-CV-4357-LHK, 2011 WL 5025118, at *6 (N.D. Cal. Oct. 20, 2011).

[74] *Cf. Paik v. Wells Fargo Bank, N.A.,* No. C 10-04016 WHA, 2011 WL 109482, at *5 (N.D. Cal. Jan. 13, 2011).

14

Case No.: C 12-04533 PSG
ORDER

**United States District Court**
For the Northern District of California

1    The threat of irreparable harm alone does not justify issuing a preliminary injunction. In

2  light of the absence of the likelihood of Plaintiffs' success, the balance of equities in favor of

3  Defendants, and no real public interest in favor of an injunction, the court does not find that a

4  preliminary injunction is warranted.[75]

5                              **IV.   CONCLUSION**

6    Plaintiffs' motion for preliminary injunction is DENIED.

7  **IT IS SO ORDERED.**

8  Dated:   11/21/2012                     _____

9                                          PAUL S. GREWAL
                                           United States Magistrate Judge

---

[75] *See Winter,* 555 U.S. at 22 (holding that "[i]ssuing a preliminary injunction based only on a
possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an
extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to
such relief").

15

Case No.: C 12-04533 PSG
ORDER