1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11   NARPAT BHANDARI AND CHANDRA          )   Case No.: C 12-04533 PSG
     BHANDARI,                            )
12                                        )   **ORDER GRANTING DEFENDANTS'**
                          Plaintiffs,     )   **MOTION TO DISMISS WITH LEAVE**
13             v.                         )   **TO AMEND**
                                          )
14   CAPITAL ONE, N.A., et al.,           )   **(Re: Docket No. 15)**
                                          )
15                        Defendants.     )
                                          )
16   _____ )

17       In this mortgage foreclosure action, Defendants Capital One, N.A. ("Capital One"), Chevy

18   Chase Bank, F.S.B. ("CCB"), and Mortgage Electronic Registration Systems, Inc. ("MERS")

19   (collectively, "Defendants") move to dismiss the complaint. Plaintiffs Narpat Bhandari and

20   Chandra Bhandari (collectively, "Plaintiffs") oppose the motion. Pursuant to Civ. L.R. 7-1(b), the

21   motion was taken under submission and the hearing vacated. Having reviewed the papers and

22   considered the arguments of counsel, Defendants' motion to dismiss is GRANTED with leave to

23   amend.

24
25
26
27
28

Case No.: C 12-04533 PSG
ORDER

# I.    BACKGROUND

## A.  Factual Background

Except as otherwise noted, the court draws the following facts, taken as true for the purposes of a motion to dismiss, from Plaintiffs' complaint.[1]

On November 14, 2005, Plaintiffs obtained a loan from CCB on real property located at 14530 Deer Park Court in Los Gatos, California (the "Property"). Plaintiffs signed a Deed of Trust against the Property to secure a Promissory Note in the amount of $4,570,200.00.

Plaintiffs completed the loan application by telephone with bank representatives. Plaintiffs later learned that CCB misrepresented certain aspects of their finances on their application, including a claim that Chandra Bhandari's monthly income totaled $50,000 when in fact she was not employed, so that Plaintiffs could be qualified for a loan that they otherwise could not afford.

In April 2008, CCB modified Plaintiffs' loan. Under the terms of the loan modification agreement, Plaintiffs were required to make monthly payments of $16,749.65 until December 2008. In or around 2009, Capital One acquired CCB and since 2009, Plaintiffs have diligently and repeatedly sought to modify further their loan.

In June 2009, Plaintiffs sent Capital One a Qualified Written Request ("QWR") by mail and facsimile identifying specific reasons why they believed that their account was in error. James Grigsby from Capital One acknowledged receipt of the QRW but Capital One never responded to it.

In July 2009, Bill Callahan ("Callahan") from Capital One advised Plaintiffs that before the bank would consider any further modification of their loan, they had to cease making monthly payments. Based on Callahan's representation, Plaintiffs did so.

In October 2009, Plaintiffs' agent, Michael Mankarious ("Mankarious") of Century 21 Financial Services, submitted another QWR to Capital One. Capital One never responded to this QWR either.

---

[1] *See* Docket No. 1.

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   In November 2009, Capital One informed Plaintiffs that they did not qualify for a further

2   loan modification and that a Trustee's Sale would be scheduled for December 29, 2009.  To avoid

3   foreclosure of the Property, Mankarious requested that the parties enter into a forbearance

4   agreement. Capital One agreed and Plaintiffs paid the bank $175,000.

5   In February 2010, Plaintiffs again applied for a loan modification and submitted all of the

6   requested documents in support of their application. A Capital One representative named Lubeena

7   Khan assured Plaintiffs: "You need not worry, you will be approved for modification."

8   In April 2010, Plaintiffs learned that their Property was once again in foreclosure and that a

9   Trustee's Sale was scheduled for May 17, 2010. Plaintiffs' counsel, Katerina Hertzog Bohammon

10   ("Bohammon") of Manatt Phelps & Philips LLP, contacted Carl Locke ("Locke") of Capital One

11   in yet another effort to avoid foreclosure of the Property. As a result of their discussions, the parties

12   agreed to enter into a second forbearance agreement wherein Plaintiffs would be required to pay a

13   sum of $93,000 before May 15, 2010 and afterwards, remit monthly payments of $28,240.17 until

14   August 2011. Locke assured Plaintiffs that if they made the payments under the second forbearance

15   agreement, Capital One would: (1) modify the loan and waive any existing default by the

16   borrowers in effect prior to the execution of the second forbearance agreement; (2) reinstate the

17   loan to its original terms; (3) remove the Notice of Sale regarding the Property from all court and

18   county records; and (4) modify Plaintiffs' minimum monthly payments to $6,000-7,000 after

19   August 2011. Other Capital One representatives, Jennifer Matthews, Tracey Thompson and Karen

20   Gustavson, assured Plaintiffs that their minimum monthly payments would be reduced after the

21   term of the second forbearance agreement expired.

22   In August 2011, Tracey Thompson of Capital One informed Plaintiffs that their application

23   for a further loan modification was being denied due to their lack of income. Capital One

24   demanded that Plaintiffs make monthly minimum payments of $24,000.

25   On July 1, 2012, Plaintiffs' counsel, Mahesh Bajoria ("Bajoria"), submitted another

26   application for loan modification. Plaintiffs again complied with all of Capital One's requests for

27   documents. On May 11, 2012, Capital One filed a Notice of Default.

28

3

United States District Court
For the Northern District of California

### B. Procedural History

On August 24, 2012, Plaintiffs filed a complaint alleging fifteen claims, including fraud, breach of oral and written contract, civil conspiracy, violation of the Real Estate Settlement Procedures Act ("RESPA"), violation of the Equal Credit Opportunity Act, breach of the implied covenant of good faith and fair dealing, rescission and cancellation, unfair business practices, breach of fiduciary duty, quiet title, promissory estoppel, and accounting.[2] On August 29, 2012, Defendants removed the case to federal court.

On August 31, 2012, the court granted Plaintiffs' motion for a temporary restraining order.[3] On November 26, 2012, the court denied Plaintiffs' motion for a preliminary injunction.[4] On December 2, 2012, Plaintiffs appealed the order denying their motion for preliminary injunction.[5] On December 3, 2012, the court denied Plaintiffs' motion for injunction pending appeal.[6]

## II.    LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[8] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged

---

[2] *See* Docket No. 1.

[3] *See* Docket No. 11.

[4] *See* Docket No. 36.

[5] *See* Docket No. 44.

[6] *See* Docket No. 46.

[7] Fed. R. Civ. P. 8(a)(2).

[8] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

[9] *Ashcroft v. Iqbal,* 556 U.S. 662,663 (2009).

4

Case No.: C 12-04533 PSG
ORDER

in the complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[10]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[11] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[12] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[13] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."[14]

### III.   DISCUSSION

#### A. Request for Judicial Notice

Defendants request judicial notice of their Deed of Trust and other foreclosure-related documents recorded in the Santa Clara County Recorder's Office. Plaintiffs do not object to the court taking judicial notice of the recorded documents that exist but do object to any notice of disputed facts contained in the publicly recorded-documents.

Defendants have not requested that the court take notice of disputed facts within the documents, and the court will not rely on facts contained therein that reasonably may be subject to dispute.[15] The authenticity of the Deed of Trust and foreclosure-related documents is not in dispute

---

[10] *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

[11] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

[12] *See id.* at 1061.

[13] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly,* 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[14] *Eminence Capital, LLC v. Asopeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

[15] *See Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) (finding the district court erred in relying on disputed facts contained within documents that otherwise were the proper subject of judicial notice). *See also* Fed. R. Evid. 201(b).

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

and may be verified by resort to the public record.[16] Defendants' request for judicial notice is GRANTED as to all of the documents.

### B. Motion to Dismiss

Even though Plaintiffs originally brought fifteen claims in their complaint, they have elected to defend only the following: (1) RESPA; (2) accounting; (3) fraud; (4) promissory estoppel; and (5) unfair business practices. They request leave to amend the other claims. Based on this concession, the court will focus on these claims only. Plaintiffs' request to amend the remainder of their claims is GRANTED.

As an initial matter, Defendants contend that Plaintiffs' failure to tender the full amount of their indebtedness is fatal to any equitable claims.[17]

Plaintiffs respond that the tender rule recognizes exceptions if the action contests the validity of the underlying debt. Plaintiffs have done so here and as a result, they are not required to tender the entire amount of the debt.[18]

The court agrees with Plaintiffs. Courts have recognized various exceptions to the tender rule.[19] Under these circumstances, the court cannot find error in Plaintiffs' failure to allege compliance with the tender rule.

---

[16] *See* Fed. R. Evid. 201(b)(2).

[17] *See Abdallah v. United Savings Bank,* 43 Cal. App.3d 1101, 1109 (1996); *FPCI Re-Hab 01 v. E & G Invs.,* 207 Cal. App. 3d 1018, 1021 (1989); *Gaffney v. Downey Sav. & Loan,* 200 Cal. App. 3d 1154, 1165 (1988) (holding that tender of full debt is prerequisite to enjoining a foreclosure); *Karlsen v. American Savings & Loan Ass'n,* 15 Cal. App. 3d 112, 117 (1971); *Gavina v. Smith,* 25 Cal. 2d 501-505-506 (1944); and *Sipe v. McKenna,* 88 Cal. App.2d 1001, 1006 (1948) (holding that full tender is a precondition to injunctive relief and quiet title).

[18] *See Lona v. Citibank, N.A.,* 202 Cal. App. 4th 89, 112-114, 134 Cal. Rptr. 3d 622 (2011) (noting four exceptions to the tender rule); *Stockton v. Newman,* 148 Cal. App. 2d 558, 564, 307 P.2d 556 (1957); *Onofrio v. Rice,* 55 Cal. App. 4th 413, 414; and *Sacchi v. Mortgage Elec. Registration Sys., Inc.,* No. CV 11-1658 AHM (CWx), 2011 WL 2533029, at * 9-10 (C.D. Cal. Jun. 24, 2011).

[19] *See Tamburri v. Suntrust Mortg., Inc.,* No. C-11-2899-EMC, 2011 WL 6294472, at *4-5 (N.D. Cal. Dec. 15, 2011) (finding multiple "exceptions and qualifications counsel against a blanket requirement of the tender rule at the pleading stage" based on a review of states and federal case law). *See also Ogilvie,* 2012 WL 3010986, at *6 (declining to apply the tender rule at the early pleading stage); *ING Bank v. Ahn,* No. C-09-995-THE, 2009 WL 20893965, at *2 (N.D. Cal. July 13, 2009 (same).

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

### 1. RESPA

Defendants contend that both of Plaintiffs' RESPA claims fail.  With respect to the claim against CCB, Defendants note that any claim would have be tied to the origination date of the loan in 2005. If the RESPA claim is based on a violation of 12 U.S.C. § 2605(b) and (c), it is subject to a three-year statute of limitations. If the claim is based on a violation of 12 U.S.C. § 2607 or 2608, it is subject to a one-year statute of limitations. According to Defendants, regardless of which sections Plaintiffs rely on in pleading their claim against CCB, they are time-barred from doing so. With respect to the claim against Capital One, Defendants dispute whether Plaintiffs' June 23, 2009 letter constitutes a valid QWR because it does not relate to servicing or servicing errors related to the loan and Plaintiffs do not state the reasons why they believe their account is in error. Defendants also dispute whether Plaintiffs have shown that the letter was ever sent and whether Plaintiffs have properly alleged damages.

Plaintiffs respond that their June 29, 2009 written correspondence constituted a QWR. According to Plaintiffs, this provides sufficient detail about the "other information" that Plaintiffs sought and falls squarely within the province of Section 2605 of RESPA. Plaintiffs further allege that Capital One violated RESPA when it failed to timely respond to their June 23, 2009 QWR. Under RESPA, Capital One was obligated to acknowledge receipt of the request within 20 days and to respond substantively to the request within 60 days. Capital One did neither.

The court agrees with Plaintiffs but only in part. Plaintiffs respond only to the claim that relates to Capital One. No mention is made of any claim against CCB. On that basis, the court presumes that Plaintiffs are no longer pursuing that claim.

Regarding their Capital One claim, while Plaintiffs sufficiently allege that they sent an appropriate QWR but received no response, their damage allegations do not pass muster. Plaintiffs allege actual damages, including but not limited to the impact on their credit, monetary damages, and potential foreclosure of their Property. These allegations, however, are conclusory. In particular, Plaintiffs have not identified how their credit was impacted or how it was specifically

7

1    tied to Capital One's violation of RESPA. Plaintiffs' RESPA claim therefore is dismissed with

2    leave to amend.[20]

3    ### 2. Accounting

4    Regarding Plaintiffs' accounting claim, Defendants contend that Plaintiffs allege neither a

5    fiduciary relationship with them nor that Defendants owed Plaintiffs. In addition, Defendants say

6    Plaintiffs owe them a sum certain totaling more than $5 million.

7    Plaintiffs respond that alleging a fiduciary relationship between the parties is not required

8    and that they have sufficiently alleged that an accounting is warranted.

9    The court agrees with Defendants. A claim for accounting survives a motion to dismiss

10   only if (1) the relationship between a plaintiff and defendant, such as a fiduciary relationship, calls

11   for an accounting, and (2) the defendant owes a balance to the plaintiff that is too complicated to

12   calculate without an accounting from the court.[21] An action for accounting is not available if the

13   amount of debt can be made certain by calculation.[22] Putting aside the first element, Plaintiffs do

14   not allege that Defendants owe them money; in fact, Plaintiffs are the defaulting borrowers. In

15   addition, the amount Plaintiffs owe Defendants is for a sum certain and does not rise to the level

16   required for a judicial accounting. Plaintiffs' claim for accounting is dismissed with leave to

17   amend.

18   ### 3. Fraud

19   Fed. R. Civ. P. 9(b) requires that averments of fraud must be specific enough to give

20   defendants notice of the particular misconduct so that they can defend against the charge.[23] The

21   averments must be accompanied by the who, what, when, where, and how the misconduct

22   occurred.[24] Plaintiffs have not done so and the claims must be dismissed.

23

24   [20] *Cf. Arellano v. American Home Mortgage Servicing,* No. C 09-05103 JSW, 2010 WL 2300986, at *2 (N.D. Cal. Jun. 4, 2010).

25   [21] *See Teselle v. McLoughlin,* 173 Cal. App. 4th 156, 179, 92 Cal. Rptr. 3d 696 (2009).

26   [22] *See id.*

27   [23] *See Rosal v. First Federal Bank of California,* 671 F. Supp. 2d 1111, 1127.

28   [24] *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003).

Case No.: C 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

With respect to Capital One, Plaintiffs allege that numerous representatives from Capital One assured Plaintiffs that their loan would be modified even though the bank never intended to modify their loan. Plaintiffs also allege that Capital One concealed from Plaintiffs that they could not foreclose on the Property while a loan modification or a short sale was proceeding. Plaintiffs allege that Capital One repeatedly denied their application for a loan modification in bad faith and have also attempted to foreclose on their Property in bad faith. Plaintiffs justifiably relied on Capital One's representations by repeatedly providing documents that the bank requested and entering into two separate forbearance agreements.

Capital One argues that Plaintiffs have not properly alleged either actual or justifiable reliance. "[T]o state a viable [fraud] claim, it is not enough to claim a fraudulent act; the fraudulent act must have caused harm. 'The causation aspect of actions for damage for fraud and deceit involves three distinct elements: (1) actual reliance, (2) damage resulting from such reliance, and (3) right to rely or justifiable reliance.'"[25] Plaintiffs have not alleged the necessary causal relationship between the alleged misrepresentations and the harm claimed that resulted.[26]

With respect to the claim against CCB, Plaintiffs allege that the bank did not disclose the actual costs of the loan to them and that it made the loan knowing that Plaintiffs could never afford it. Plaintiffs also allege that CCB knowingly misstated Chandra Bhandari's income even though she was not working and used inflated loan data to justify closing the loan transaction for a higher amount.

The court agrees with Defendants. Plaintiffs have not plead their fraud claims with the particularity required under Rule 9(b). Even though various Capital One representatives may have made representations to Plaintiffs regarding modification of their loan, their assurances as plead were speculative and they do not appear to have had the authority to be making such

---

[25] *Panoutsopoulos v. Chambliss,* 157 Cal. App. 4th 297, 308 (2007) (citations omitted).

[26] *See Pulver v. Avco Fin. Servs.,* 182 Cal. App. 3d 622, 640 (1986).

Case No.: C 12-04533 PSG
ORDER

representations to Plaintiffs. Based on the substance of the assurances, Plaintiffs could not have justifiably relied on them. In addition, Plaintiffs have not plead justifiable reliance with enough specificity to show that the two separate forbearance agreements that Plaintiffs entered into guaranteed that their loan would be restored to its original terms, and then modified on even better terms.

Plaintiffs also fail to plead with particularity the fraud claim against CCB. The allegations are unclear as to who made misrepresentations to Plaintiffs, what was misrepresented, and when the misrepresentations were made.

Both fraud claims are dismissed with leave to amend.

### 4. Promissory Estoppel

Defendants contend that Plaintiffs have not alleged that Capital One ever promised that it would not foreclose on the Property. And even if Capital One had ever made such a promise, Defendants argue that the effect of it would be precluded by the statute of frauds. The forbearance agreement expressly states that: "This Agreement may not reinstate the loan" and the Agreement "shall not be construed as a discontinuance of the foreclosure action by the Lender." Defendants also argue that Plaintiffs have not alleged that they changed their position in reliance on Capital One's representations. On that basis, Defendants conclude that Plaintiffs' claim for promissory estoppel must be dismissed.

Plaintiffs respond that they did rely to their detriment on Defendants' promises. According to Plaintiffs, Defendants assured Plaintiffs that by entering into a forbearance agreement, Capital One would: (1) modify the loan and waive any existing default by the borrowers in effect prior to the execution of the second forbearance agreement; (2) reinstate the loan to its original terms; (3) remove the Notice of Sale regarding the Property from all court and county records; and (4) modify Plaintiffs' minimum monthly payments to $6,000-7,000 after August 2011. Other Capital One

10

representatives also assured Plaintiffs that their loan would be modified. Based on these representations, Plaintiffs allege that they invested more time and money into their loan modification efforts.

The court agrees with Defendants but only in part. "[A] promise is an indispensable part of the doctrine of promissory estoppel. The cases are uniform in holding that this doctrine cannot be invoked and must be held inapplicable in the absence of a showing that a promise has been made upon which the complaining party relied to his prejudice."[27] The promise must be "clear and unambiguous in its terms."[28] "To be enforceable, a promise need only be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages."[29] "[A] promise that is vague, general or of indeterminate application is not enforceable."[30] The express terms of the forbearance agreement are unambiguous in stating that the loan would not be reinstated and that the agreement could not be construed as a discontinuance of the foreclosure action. In contrast, the alleged statements by Capital One personnel to Plaintiffs are far from clear and unambiguous; they appear speculative and indicate that someone, other than themselves, was making the final decision regarding any loan modification. Plaintiffs also have not alleged any detrimental reliance. Aside from alleging that they invested time, Plaintiffs have not alleged that they changed their position in reliance on Capital One's representations. The claim for promissory estoppel is dismissed with leave to amend.

---

[27] *Div. of Labor Law Enforcement v. Transpacific Transp. Co.,* 69 Cal. App. 3d 268, 277, 137 Cal. Rptr. 855 (1977).

[28] *Laks v. Coast Fed. Sav. & Loan Ass'n,* 60 Cal. App. 3d 885, 890, 131 Cal. Rptr. 836 (1976).

[29] *Garcia v. World Sav. FSB,* 183 Cal. App. 4th 1031, 1045, 107 Cal. Rptr. 683 (2010).

[30] *Aguilar v. Int'l Longshoremen's Union Local No. 10,* 966 F.2d 443, 446 (9th Cir. 1992) (internal citations omitted).

11

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

### 5. Unfair Business Practices

Defendants contend that this claim fails because Plaintiffs have not identified any prohibited practice or unfair competition. In addition, Plaintiffs' claim relies on other claims and to the extent they are deficient so too, is this one.

Plaintiffs allege that as specified in their RESPA and fraud claims, Defendants' conduct is unfair, unlawful, and fraudulent.

The court agrees with Defendants. California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."[31] In addition, a claim under Section 17200 is "derivative of some other illegal conduct or fraud committed by a defendant, and [a] plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation."[32] "A complaint based on an unfair business practice may be predicated on a single act; the statute does not require a pattern of unlawful conduct."[33] Though the execution of documents in connection with a Deed of Trust may constitute a "business act or practice," Plaintiffs only broadly allege that Defendants' conduct is unlawful, unfair, and fraudulent. To the extent that Plaintiffs' claims for RESPA and fraud have not survived a motion to dismiss, so too, must the UCL claim. Defendants' motion to dismiss the UCL claim is granted with leave to amend.

### C. CONCLUSION

Defendants' motion to dismiss is granted with leave to amend. Plaintiffs shall file any amended complaint no later than January 7, 2013.

**IT IS SO ORDERED.**

Dated:  12-21-12

PAUL S. GREWAL
United States Magistrate Judge

---

[31] Cal. Bus. & Prof. Code § 17200.

[32] *See Benham v. Aurora Loan Servs.,* No. 09-2059, 2009 WL 2880232, at *4 (N.D. Cal. Sept. 1, 2009).

[33] *Brewer v. Indymac Bank,* 609 F.Supp. 2d 1104, 1122 (E.D. Cal. 2009).

12

Case No.: C 12-04533 PSG
ORDER