United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| NARPAT BHANDARI AND CHANDRA BHANDARI,<br><br>                          Plaintiffs,<br><br>        v.<br><br>CAPITAL ONE, N.A., et al.,<br><br>                          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 12-04533 PSG<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS**<br><br>(Re: Docket No. 65) |

In this mortgage foreclosure action, Defendants Capital One, N.A. ("Capital One") and Chevy Chase Bank, F.S.B. ("CCB"), (collectively, "Defendants") move to dismiss Narpat and Chandra Bhandari's (collectively, "Plaintiffs") first amended complaint ("FAC"). Plaintiffs oppose the motion. Oral arguments were heard on March 19, 2012. Having reviewed the papers and considered the arguments of counsel, Defendants' motion to dismiss is GRANTED with leave to amend as to certain claims.

Case No.: 12-04533 PSG
ORDER

**United States District Court**
For the Northern District of California

## I.     BACKGROUND

**A.     Factual Background**

The court draws the following facts, taken as true for the purposes of the motion to dismiss, from Plaintiffs' first amended complaint ("FAC")[1] and from the documents judicially noticed by the court.

On November 14, 2005, Plaintiffs obtained a loan (the "Loan Agreement") from CCB on real property located at 14530 Deer Park Court in Los Gatos, California 95032 (the "Property"). On November 16, 2005, Plaintiffs signed a Deed of Trust ("DOT") against the Property to secure a Promissory Note ("Note") in the amount of $4,570,200.00 as part of the loan agreement.[2]

Plaintiffs completed the loan application by telephone with Bill Callahan ("Callahan") of CCB. Although Callahan assured Plaintiffs that he would accurately transcribe their information, he did not do so – instead of noting Chandra Bhandari's monthly income as $0, he recorded it as $50,000. Although Plaintiffs state they never received a copy of the loan application or the Note until November or December 2009, the Note is signed by Plaintiffs and dated November 16, 2005.[3]

The monthly minimum payment under the loan was $12,667.34. The terms of the contract provide that the payments would be applied to the interest and the principal. Plaintiffs allege that while CCB told them that the minimum payment would cover the monthly interest and some principal, it was not sufficient to do so. Plaintiffs' payments therefore did not reduce the principal and the unpaid portion of the interest was added to the principal each month. In other words, CCB did not tell Plaintiffs that the agreement was for a negative amortized loan.

---

[1] *See* Docket No. 63.

[2] *See* Docket No. 61, Ex. A.

[3] *See id.*; *see also* Docket No. 66, Ex. C.

Case No.: 12-04533 PSG
ORDER

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In September 2008, CCB modified the loan (the "Loan Modification") because Plaintiffs had reached the limit in the Loan Agreement that only allowed the principal to reach 110 percent of the original loan amount.  Under the Loan Modification, Plaintiffs were required to make monthly payments of $16,749.65.  This time, Plaintiffs were informed that the loan was negatively amortized and the principal would continue to increase up to the modified contract limit of 115 percent of the original loan.[4]

In 2009, Capital One acquired CCB.  Since 2009, Plaintiffs have repeatedly sought to further modify their loan with Capital One.  In July 2009, Callahan, now at Capital One, advised Plaintiffs that before the bank would consider any further modification of the loan, they had to cease making monthly payments.  Based on Callahan's representation, Plaintiffs did so.

In 2010, Capital One declared the loan in default and retained TD Services as a collection agent.  In April 2010, Plaintiffs learned that their Property was in foreclosure and that a Trustee's Sale was scheduled for May 17, 2010.  Plaintiffs contacted Capital One through counsel and the parties agreed to enter into a forbearance agreement in May 2010 (the "Forbearance Agreement").

Under the Forbearance Agreement, Plaintiffs agreed to pay a one-time payment of $93,000 and to remit monthly payments of $28,240.17 until August 2011 at which time the loan payments would decrease to $7,000 per month.  In exchange, Capital One assured Plaintiffs it would cease its debt collection efforts and rescind the Notice of Trustee's Sale, which it did.[5]

On May 11, 2012, Capital One again notified Plaintiffs that the loan was in default.  On July 1, 2012, Plaintiffs' counsel submitted another application to Capital One for a loan modification, which was denied.  On August 7, 2012, Capital One filed a Notice of Trustee's sale.  The Trustee's Deed Upon Sale was recorded on December 12, 2012.

---

[4]  *See* Docket No. 61.

[5]  *See id.* at 17.

Case No.: 12-04533 PSG
ORDER

**B.     Procedural History**

On August 24, 2012, Plaintiffs filed a complaint in state court against CCB, Capitol One and Mortgage Electronic Registration Systems, Inc. ("MERS") alleging fifteen causes of action, including fraud, breach of contract, civil conspiracy, violation of the Real Estate Settlement Procedures Act ("RESPA"), violation of the Equal Credit Opportunity Act, breach of the implied covenant of good faith and fair dealing, rescission and cancellation, unfair business practices, breach of fiduciary duty, quiet title, promissory estoppel, and accounting.[6]  On August 29, 2012, Capital One removed the case to federal court.

In federal court, Defendants moved to dismiss all of the claims.  Plaintiffs opposed the motion with respect to the RESPA, accounting, fraud, promissory estoppel, and unfair business practices claims.  The court dismissed these claims with leave to amend, but granted Plaintiffs' request to withdraw and amend the remaining claims.[7]

On January 21, 2013, Plaintiffs filed their FAC alleging nine causes of action against Capitol One and CCB, namely: (1) breach of contract; (2) reformation of contract; (3) breach of fiduciary duty; (4) fraud; (5) violation of the Truth in Lending Act ("TILA");[8] (6) violation of the Rosenthal Act;[9] (7) declaratory relief; (8) quiet title and cancellation of instruments; and (9) unfair business practices.[10]  Plaintiffs also allege a violation of the Fair Debt Collections Practices Act

---

[6]  *See* Docket No. 1.

[7]  *See* Docket No. 53.

[8]  *See* 15 U.S.C. §§ 1640(e), (k).

[9]  *See* Cal. Civ. Code § 1788.10.

[10]  *See* Docket No. 61. The claims declaratory relief, quiet title and cancellation of instruments, and violation of the Rosenthal Act were asserted only against Capital One.

Case No.: 12-04533 PSG
ORDER

**United States District Court**
For the Northern District of California

("FDCPA")[11] against a new defendant, TD Services.  On February 7, 2012 Defendants filed the instant motion to dismiss.[12]

## II.    LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[13]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[14]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]  Under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[16]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[17]  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[18]  However, the court need not accept as true

---

[11]  *See* 15 U.S.C. § 1692.

[12]  Although MERS is also on the motion, Plaintiffs do not assert any claims against MERS.

[13]  Fed. R. Civ. P. 8(a)(2).

[14]  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

[15]  *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009).

[16]  *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

[17]  *See Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

[18]  *See id.* at 1061.

Case No.: 12-04533 PSG
ORDER

allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[19]

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that

the complaint could not be saved by amendment."[20]

### III.   DISCUSSION

**A.   Request for Judicial Notice**

Defendants request judicial notice of the DOT, the Note, and other foreclosure-related

documents recorded in the Santa Clara County Recorder's Office.[21]  Plaintiffs do not object to the

court taking judicial notice of the recorded documents that exist but do object to any notice of

disputed facts contained in the publicly recorded-documents.[22]

Defendants have not requested that the court take notice of disputed facts within the

documents, and the court will not rely on facts contained therein that reasonably may be subject to

dispute.[23]  The authenticity of the DOT and foreclosure-related documents are not in dispute and

may be verified by resort to the public record.[24]  Defendants' request for judicial notice is

GRANTED as to all of the documents.

---

[19]  *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly,* 550 U.S. at 561 ("[A] wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[20]  *Eminence Capital, LLC v. Asopeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

[21]  *See* Docket No. 66.

[22]  Although Plaintiffs object to taking notice of the Substitution of Trustee and Assignment of Deed of Trust documents, Defendants have not asked the court to take judicial notice of these documents.

[23]  *See* Fed. R. Evid. 201(b)*; see also Lee v. City of L.A.,* 250 F.3d 668, 689 (9th Cir. 2001) (finding that the district court erred in relying on disputed facts contained within documents that otherwise were the proper subject of judicial notice).

[24]  *See* Fed. R. Evid. 201(b)(2).

Case No.: 12-04533 PSG
ORDER

**B.      Motion to Dismiss**

As an initial matter, Defendants argue that Plaintiffs equitable claims should be dismissed because they have not tendered the full amount of the loan.  The court has already addressed the failure to aver tender argument.  In its December 21, 2012, order the court ruled that Plaintiffs' failure to plead a tender offer did not prevent them from pursuing equitable claims[25] because there are many exceptions to the tender rule.[26]

Defendants next argue that the general release provision in the Forbearance Agreement bars all of Plaintiffs instant claims.  In their opposition, Plaintiffs acknowledge signing the Forbearance Agreement and the concomitant release, but argue that it is unenforceable due to undue influence, lack of consideration, fraud, and duress.

A written release extinguishes any obligation covered by its terms as long as it is "clear, explicit and comprehensible in each [of its] essential details."[27]  There are two types of releases: general releases and specific releases.  A general release waives all claims against a party, regardless of how or when they accrued.[28]  A specific release, on the other hand, is narrowly tailored, *e.g.*, to certain types of claims or claims arising from a particular event.[29]  Unless obtained by fraud, deception, misrepresentation, duress, or undue influence, a waiver that clearly notifies the

---

[25]  *See* Docket No. 53.

[26]  *See, e.g., Tamburri v. Suntrust Mortg., Inc.,* Case No. C-11-2899-EMC, 2011 WL 6294472, at *4-5 (N.D. Cal. Dec. 15, 2011) (finding multiple "exceptions and qualifications counsel against a blanket requirement of the tender rule at the pleading stage" based on a review of state and federal case law); *see also ING Bank v. Ahn,* Case No. C-09-995-THE, 2009 WL 20893965, at *2 (N.D. Cal. July 13, 2009) (declining to apply the tender rule at the early pleading stage); *Lona v. Citibank, N.A.,* 202 Cal. App. 4th 89, 112-14 (2011) (noting four exceptions to the tender rule).

[27]  *Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 959 (2007).

[28]  *See, e.g., Matter of Vehm Engineering Corp.*, 521 F.2d 186, 188 (9th Cir. 1975) ("We hereby release you from all claims . . . from the beginning of the world to date" is a general release).

[29]  *See, e.g., Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1445 (9th Cir. 2006) (finding that a release of all present and future claims relating to the narrow issue of net worth is a specific release).

Case No.: 12-04533 PSG
ORDER

prospective releaser of the effect of signing it is enforceable. [30]  So long as the complaint does not

adequately plead a claim that a signed waiver is unenforceable, the affirmative defense of waiver

may be decided at the motion to dismiss stage.[31]

Here, the waiver provision of the Forbearance Agreement reads:

> <u>Borrower's Admissions and Waivers</u>.  Borrower admits she is in default.  The Lender under the Loan Documents is correct, and represents and acknowledges that there are no defenses, offsets or counter claims of any nature whatsoever to any of the Loan Documents.  **In consideration of Lender's forbearance, Borrower hereby expressly waivers her right to challenge or contest the foreclosure process initiated by Lender, including all acts or omissions prior to or subsequent to this Agreement, whether such acts or omissions were performed by Lender, the Trustee, or any party acting on behalf of the Lender or Trustee.**
>
> **The Borrower(s) hereby waive any and all rights under California Civil Code section 1542 which states "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."**
>
> **Borrowers admit and recognize that any and all postponements of a Trustee's Sale under this Agreement is done by mutual consent of the Borrowers and Lender under California Civil Code § 2924g(c)(2) and that the sale may be postponed from time to time until the loan is fully reinstated or the foreclosure is consummated.**[32]

The contract makes clear in plain language that Plaintiffs expressly waive their right to challenge

or contest the foreclosure process.  Although Plaintiffs argue in their opposition that the

Forbearance Agreement is unenforceable due to fraud, duress, lack of consideration, and undue

influence, the complaint only alleges fraud, which is inadequately plead in the complaint, as

explained below.  Even if it is true that the Forbearance Agreement was obtained by duress, lack of

consideration or undue influence, the complaint does not plead facts in support of these allegations

---

[30]   *See Skrbina v. Fleming Companies*, 45 Cal. App. 4th 1353, 1366 (1996).

[31]   *See, e.g., Kaufman & Broad-South Bay v. Unisys Corp.,* 822 F. Supp. 1468, 1474 (N.D. Cal. 1993) (dismissing contract claim on a motion to dismiss with leave to amend because plaintiff had not pleaded facts to support his claims of fraud, duress, or undue influence and therefore the waiver was presumptively enforceable).

[32]   *See* Docket No. 61, Ex. C (emphasis original).

Case No.: 12-04533 PSG
ORDER

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

so the court cannot consider these arguments.  As plead in the FAC, the waiver provision is enforceable.

Contrary to Defendants assertion, however, the waiver is not a general waiver and it does not bar all of Plaintiffs' claims.  Instead, the express terms of the release limit its application to claims that "challenge or contest the foreclosure process."  The court will address whether the waiver provision applies below.

### 1.    Quiet Title and Cancellation of Instruments

Plaintiffs allege that they are the true owners of the Property based on the invalid trustee sale which voids the trustee deed.[33]  Defendants argue that the claim is barred by the release in the Forbearance Agreement and Plaintiffs have failed to plead factual allegations that support their conclusory legal assertion of ownership.[34]

"A quiet title action must include: (1) a description of the property in question; (2) the basis for plaintiff's assertion of title; and (3) the adverse claims to plaintiff's title."[35]  To the extent Plaintiffs argue that the trustee sale is invalid because Defendants did not have the right to foreclose or because there was a defect in the foreclosure process, the claim is barred by the release.  Otherwise, Plaintiffs only make a threadbare and conclusory statement that they are the rightful owners of the property due to "an invalid trustee sale and void trustee deed upon sale" but do not provide a factual basis for that conclusion.[36]

---

[33]  *See* Docket No. 61 ¶ 65.

[34]  Defendants additionally argue that Plaintiffs fail to state a claim due to their lack of averment of tender and failure to file a verified claim.  The court already addressed the tender argument above and it does not undermine the claim.  There is also no requirement to file verified complaints in federal court.  Once a case is removed to federal court, the federal rules apply and the California procedural rules are inapposite. *See* Fed. R. Civ. P. 81(c)(1).

[35]  *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009); *see also* Cal. Civ. Proc. Code § 761.020.

[36]  Docket No. 61 ¶ 65.

9

Case No.: 12-04533 PSG
ORDER

Defendants' motion to dismiss the quiet title claim is GRANTED.  Plaintiffs may only reassert the quiet title claim based on the foreclosure process if they amend to adequately plead facts that challenge the validity of the release.

### 2.    TILA Claim

Plaintiffs argue that Defendants violated TILA by failing to make a proper TILA disclosure during the origination of the Loan Agreement and the Loan Modification.[37]   Defendants argue that the claim is barred by the release and by TILA's one-year statute of limitations.  Plaintiffs respond that the 2010 Dodd-Frank Amendment to TILA applies, which allows a party to assert a TILA claim without regard for the one-year statute of limitations.

Section 1639 of TILA requires a mortgage creditor to make certain disclosures during the origination of a loan.[38]  Claims for inadequate TILA disclosures are subject to a three-year statute of limitations which runs from the date of the violation.[39]  The 2010 Dodd-Frank Amendment to TILA, however, allows a consumer to assert a TILA claim as "matter of defense [to a foreclosure action] by recoupment or set-off" without regard for the statute of limitations.[40]  This expanded statute of limitations applies only to actions to defend against a foreclosure including claims for recoupment.[41]  If a TILA claim is asserted offensively in an action to recover damages, however, the one-year statute of limitations for inadequate TILA disclosures applies.[42]

---

[37]  *See* Docket No. 61 ¶ 44.  Although Plaintiffs state they included the TILA disclosure in Exhibit B of the FAC, Exhibit B is a chart of interest rates.  *See* Docket No. 61, Ex. B.  Taking Plaintiffs pleading as true and absent judicially noticed evidence to the contrary, the court presumes the TILA disclosures were deficient.

[38]  *See* 15 U.S.C. § 1639.

[39]  *See id.* at § 1640(e).

[40]  *Id.* at § 1640(k).

[41]  *See In re Beach*, 447 B.R. 313, 323 (Bankr. D. Idaho 2011)

[42]  *See Skrabe v. U.S. Bank, N.A.*, Case No. C10-03230, 2012 WL 6019586, at *3 (N.D. Cal. Dec. 3, 2012) (*citing Tacheny v. M & I Marshall & Ilsey Bank,* Case No. 10–cv–2067, 2011 WL 1657877, at *5 (D. Minn. Apr. 29, 2011)).

Case No.: 12-04533 PSG
ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

Plaintiffs' claim is barred regardless of whether TILA is asserted offensively or defensively. If Plaintiffs assert TILA as an offensive claim to recover damages based on Defendants' inadequate disclosure during the origination of the Loan Agreement, it is time-barred by the one-year statute of limitations. To the extent Plaintiffs assert TILA as a defense to foreclosure, it by definition falls under the release provision in the Forbearance Agreement.

Defendants' motion to dismiss the TILA claim is GRANTED with leave to amend to adequately plead facts that challenge the validity of the release.

### 3.    Rosenthal Act Claim

Plaintiffs argue that Defendants violated the Rosenthal Act by charging them more than was actually owed each month under the Loan Agreement. Defendants argue that the Rosenthal Act is inapplicable since a mortgage is not a consumer debt and Capital One is not a debt collector under the Act. Plaintiffs reply that a mortgage is a debt under the FDCPA and therefore it is also a debt under the Rosenthal Act.

The Rosenthal Act prohibits debt collectors in certain circumstances from collecting or attempting to collect consumer debts arising from consumer credit transactions.[43] "Consumer debt" means "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction."[44] "Consumer credit transaction" means "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes."[45] A credit card debt is an example of a consumer debt covered by

---

[43] *See* Cal. Civ. Code § 1788.14.

[44] *See id.* at § 1788.2(f).

[45] *See id.* at § 1788.2(e).

Case No.: 12-04533 PSG
ORDER

the Rosenthal Act.[46]   A residential mortgage, however, is not a consumer debt for the purposes of

the Rosenthal Act.[47]

Plaintiffs assert their Rosenthal Act claim based on Defendants' collecting mortgage

payments.   Regardless of whether a mortgage is a consumer debt under the FDCPA, a mortgage is

not a consumer debt for the purposes of the Rosenthal Act.[48]   Capital One's actions to collect on

the mortgage therefore cannot constitute a debt collection under the Act.[49]   Plaintiffs FAC therefore

fails to state a claim under the Rosenthal Act.

Because the mortgage at issue cannot constitute a debt within the meaning of the Rosenthal

Act, Defendants' motion to dismiss the Rosenthal Act claim is GRANTED without leave to amend.

### 4.      Breach of Fiduciary Duty Claim

Plaintiffs assert that CCB breached its fiduciary duty by failing to disclose the terms of the

Loan Agreement, failing to accurately record loan application information, and intentionally selling

Plaintiffs a loan they could not afford.[50]   Defendants argue that a mortgage lender does not owe a

fiduciary duty to its borrower and that the claim is barred by the four-year statute of limitations.

Plaintiffs respond that Capital One is a mortgage broker and therefore owed them a fiduciary duty.

A fiduciary relationship is a "relation existing between two parties to a transaction wherein

one of the parties to a transaction is in duty bound to act with the utmost good faith for the benefit

---

[46]   *See, e.g., Moya v. Chase Cardmember Servs.*, 661 F. Supp. 2d 1129, 1133 (N.D. Cal. 2009).

[47]   *See, e.g.*, *Castaneda v. Saxon Mortg. Services, Inc.*, 687 F. Supp. 2d 1191 (E.D. Cal. 2009); *see also Morgera v. Countrywide Home Loans, Inc.*, Case No. 09-01476, 2010 WL 160348, at *3 (E.D. Cal. 2010); *Pittman v. Barclays Capital Real Estate, Inc.*, Case No. 09-0241, 2009 WL 1108889, at *3 (S.D. Cal. 2009); *Ines v. Countrywide Home Loans, Inc.*, Case No. 08-1267, 2008 WL 4791863, at *3 (S.D. Cal. 2008).

[48]   *See Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1198 (E.D. Cal. 2010).

[49]   *See id.*

[50]   *See* Docket No. 71 at 20-22; *see also* Docket No. 70 at 17-18.

Case No.: 12-04533 PSG
ORDER

of the other party."[51]  "Before a person can be charged with a fiduciary obligation, he must either

knowingly undertake to act on behalf and for the benefit of another, or must enter into a

relationship which imposes that undertaking as a matter of law."[52]  A mortgage broker is an agent

for its borrower-client and therefore owes the client a fiduciary duty in finding it a suitable

lender.[53]  A mortgage lender, however, does not owe its borrower a fiduciary duty.[54]  The statute of

limitations for breach of fiduciary duty is four years.[55]

        Plaintiffs agree that a lender does not owe its borrower a fiduciary duty, but contend that

Capitol One is actually a mortgage broker owing Plaintiffs a fiduciary duty.  The only fact

Plaintiffs plead in support of this legal conclusion is that Defendants securitized their outstanding

mortgage loans.  But this allegation implicitly recognizes that Defendants are mortgage brokers

that pooled and securitized their mortgage loans.  Nothing in the FAC shows that Defendants were

acting as a mortgage broker, helping Plaintiffs find a suitable third-party lender, much less that

they volunteered to act as Plaintiffs' agent.  Moreover, even if Defendants did breach a fiduciary

duty when it failed to disclose the terms of the Loan Agreement, that breach occurred in 2005 and

is therefore barred by the four-year statute of limitations.

        Defendants' motion to dismiss the breach of fiduciary duty claim is GRANTED without

leave to amend.

---

[51]  *Herbert v. Lankershim*, 9 Cal. 2d 409, 483 (1937).

[52]  *City of Hope Nat'l Medical Center v. Genentech, Inc.*, 43 Cal. 4th 375, 385 (2008) (citations
omitted).

[53]  *See Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 782 (1979).

[54]  *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal. App. 3d 1089, 1093 n.1 (1991)
("The relationship between a lending institution and its borrower-client is not fiduciary in nature.");
*see also Price v. Wells Fargo Bank,* 213 Cal. App. 3d 465, 476 (1989) ("Between a bank and its
loan customers" there is no fiduciary relationship.) (overruled on other grounds).

[55]  Breach of fiduciary duty claims asserted on their own are subject to the four-year statute of
limitations in Cal. Civ. Proc. Code § 343.

13

Case No.: 12-04533 PSG
ORDER

### 5. Fraud Claim

The court previously dismissed Plaintiffs' fraud claim with leave to amend because it was not pleaded with sufficient particularity.[56] In their FAC, Plaintiffs assert new fraud claims. Defendants' argue that Plaintiffs again fail to plead fraud with sufficient particularity and that the claim is barred by the three-year statute of limitations. Plaintiffs reply that although "the [FAC] is not a model of clarity," they have met their pleading burden.[57]

A claim for fraud requires allegations of misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damages.[58] Federal Rule of Civil Procedure 9(b) requires that averments of fraud be specific enough to give defendants notice of the particular misconduct so they can defend against the allegation.[59] The Ninth Circuit therefore requires averments of fraud be accompanied by the "who, what, when, where, and how of the misconduct charged."[60] With respect to fraud allegations against a corporate defendant, the pleadings must allege the names of the individuals who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, when they spoke, and what they said or wrote.[61]

Even as Plaintiffs generally acknowledge that the FAC is unclear, the court has identified three specific bases upon which Plaintiffs assert their fraud claims: (1) Defendants never gave Plaintiffs an opportunity to know the terms of the Loan Agreement executed in 2005; (2) Defendants' employee Callahan made fraudulent statements in filling out Plaintiffs' loan

---

[56] *See* Docket No. 53.

[57] *See* Docket No. 70 at 3.

[58] *See Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1127 (N.D. Cal. 2009).

[59] *See* Fed. R. Civ. P. 9(b).

[60] *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

[61] *See Rosal*, 671 F. Supp. 2d at 1127.

Case No.: 12-04533 PSG
ORDER

application in 2005; and (3) Defendants fraudulently promise to rescind the notice of default when executing the Forbearance Agreement.

Although they assert that CCB and Capital One agents made fraudulent promises in executing the Loan and Forbearance Agreements, Plaintiffs have not identified who made those statements, when the statements were made, and whether the speaker had authority to bind the company. The only agent Plaintiffs identify with the requisite particularity is Callahan who was involved in filling out the loan application in 2005; the only fraudulent acts Plaintiffs properly identify are the promises made by Callahan with respect to the loan application.

Defendants argue Plaintiffs' fraud claim is barred by the statute of limitations because they knew or should have known of Callahan's allegedly fraudulent statements more than three years before the suit was filed, *i.e.*, prior to August 24, 2009. Plaintiffs respond that they only learned of the fraudulent statements in November or December 2009 when they were given their first opportunity to review the Loan Agreement.

Claims for fraud are subject to a three-year statute of limitations.[62] Under the discovery rule, the statutory period "begins to run only when the alleged fraud was or should have been discovered."[63] A plaintiff whose complaint shows on its face that his fraud claim would be time-barred without the benefit of the discovery rule must specifically plead facts to show: (1) the time and manner of discovery of the alleged fraud; and (2) the inability to have made earlier discovery despite reasonable diligence.[64]

Plaintiffs assert that they did not know about Callahan's allegedly fraudulent statements because they never had an opportunity to review the loan documents. But the FAC and the

---

[62] *See* Cal. Civ. Proc. Code § 338(d).

[63] *Fuls v. Shastina Properties, Inc.*, 448 F. Supp. 983, 987 (N.D. Cal. 1978).

[64] *See Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1071 (C.D. Cal. 2010).

Case No.: 12-04533 PSG
ORDER

judicially noticed documents indicate that Plaintiffs did have opportunities to review the terms of the Loan Agreement prior to August 24, 2009.  The Loan Agreement executed on November 2005 bears Plaintiffs' signatures.  Plaintiffs do not contest that they signed this document.  They therefore had an opportunity at that time to review the terms of the agreement and discover the allegedly fraudulent statements.  Plaintiffs also should have reviewed the loan terms in September 2008 when they entered into the Loan Modification.  The Loan Modification was also signed by Plaintiffs and incorporates the Loan Agreement by reference.  As a result, the latest Plaintiffs knew or should have known about Callahan's allegedly fraudulent statements is September 2008.

As Plaintiffs filed this action on August 24, 2012, their claim that they relied on Callahan's fraudulent promises made more than three years prior is barred by the statute of limitations.  Plaintiffs' fraud claim is DISMISSED with leave to amend.

**6.      Breach of Contract Claim**

Plaintiffs assert that Defendants breached the express terms of the Loan Agreement by failing to give Plaintiffs the benefit of paragraph 12 of the Note.  Paragraph 12 of the Note incorporates by reference paragraph J of the DOT.  Paragraph J of the DOT provides that:

> J.      "Applicable Law" means all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

Plaintiffs argue that paragraph J incorporates the Rosenthal Act, which Defendants breached by incorrectly calculating loan payments and overcharging Plaintiffs.[65]  Defendants respond that the breach of contract claim is barred by the four-year statute of limitations because the contract was executed in 2005.

---

[65]  Although Plaintiffs allege that Defendants also failed to give Plaintiffs the benefit of the FDCPA, Plaintiffs only assert FDCPA violations against TD Services.  The FDCPA therefore cannot provide a foundation for Plaintiffs breach of contract claim against Defendants.

16

Case No.: 12-04533 PSG
ORDER

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Breach of contract requires establishment of four elements: existence of a contract, performance by the complaining party, breach by the opposing party, and damages.[66]  The statute of limitations for all breach of contract claims, including breach of the implied covenant of good faith and fair dealing, is four years.[67]  The statute begins to run at the time of the breach, not at the time of formation.[68]

Although Plaintiffs assert the legal conclusion that Plaintiffs breached the contract by charging inaccurate interest rates, Plaintiffs have not sufficiently plead the relevant terms of the agreement and the facts of the breach, such as what interest rate Capital One was obliged to charge under the contract and what interest rate they actually charged.  Although Plaintiffs attach to the FAC a list of interest rates, they do not explain the chart or how it shows that Defendants miscalculated rates.[69]  Assuming the dates listed in the chart refer to the months for which Defendants miscalculated interest rates, the latest date in the chart is February 2008.  But breaches arising from miscalculations prior to August 24, 2008, are barred by the four-year statute of limitations.

Plaintiffs claim for breach of contract is DISMISSED with leave to amend.

**7.     Breach of the Implied Covenant Claim**

Plaintiffs allege that Defendants breached the covenant of good faith and fair dealing in myriad ways, for example, by breaching their fiduciary duty to Plaintiffs, by miscalculating interest rates, and by misrepresenting a desire to work with Plaintiffs to modify their loan.  Defendants argue that the claim is time-barred by the statute of limitations and that Plaintiffs' failure to plead a

---

[66] *See, e.g., Sonic Mfg. Techs., Inc. v. AAE Sys., Inc.*, 196 Cal. App. 4th 456, 464 (2011).

[67] *See* Cal. Civ. Proc. Code § 337(1).

[68] *See, e.g., H.B. Filmes, LTDA v. CBS, Inc.*, 98 Fed. Appx. 596, 598 (9th Cir. 2004).

[69] *See* Docket No. 61, Ex. B.

Case No.: 12-04533 PSG
ORDER

breach of contract means the claim for breach of the implied covenant of good faith and fair dealing must fail.

"[T]the implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of [a] contract, and cannot be extended to create obligations not contemplated by the contract."[70]   Although Defendants assert no less than fifteen different ways Defendants breached the implied covenant, many of them are not based on Capital One's compliance with the express terms of the contract.   For example, Plaintiffs allege breach of the implied covenant based on Defendants' breach of fiduciary duty and their misrepresenting a willingness to work with Plaintiffs to modify the loan, but Plaintiffs have not sufficiently alleged that the contract creates a fiduciary duty nor that it obligates Capital One to modify the Loan Agreement upon Plaintiffs' request.   To the extent Plaintiffs base their breach of the implied covenant claim on Defendants' actions that do not constitute performance of express terms of the contract, Plaintiffs fail to state an actionable claim.

To the extent Plaintiffs' breach of the implied covenant claim is properly based on Capital One's unreasonable performance of the express terms of the agreements – for example, miscalculating interest rates– Plaintiffs have not adequately described what Capital One's duties under the contract were and how its performance was unreasonable.

Defendants' motion to dismiss the breach of the implied covenant claim is GRANTED with leave to amend.

### 8.   Reformation of Contract Claim

Plaintiffs assert that the Loan Agreement should be reformed to reflect the parties' true intentions.   Defendants argue that reformation of contract is not by itself a cause of action.

---

[70]   *See Pasadena Live, LLC v. City of Pasadena,* 114 Cal. App. 4th 1089, 1093-94 (2004).

18

Case No.: 12-04533 PSG
ORDER

Plaintiffs respond that reformation is warranted due to mistake or fraud in the execution of the Loan Agreement.

Section 3366 of California Civil Code provides that "[w]hen, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised."[71] Reformation of contract is therefore not an independent cause of action, but rather a remedy for a contract obtained through fraud or mistake at the time of contract. [72]

As discussed above, all of Plaintiffs' fraud claims are dismissed.  To the extent Plaintiffs base the reformation claim on unilateral or mutual mistake, Plaintiffs have not identified what mistake they made and how Defendants' knew or should have known of the mistake at the time of contract.  In the absence of a claim that supports the remedy of reformation, this claim fails.

Because reformation is not an independent cause of action, Defendants' motion to dismiss the reformation of contract claim is GRANTED.  Nothing in this order shall prevent Plaintiffs from pursuing reformation as a remedy for fraud, unilateral mistake, or mutual mistake.

## 9.    Declaratory Relief Claim

Plaintiffs argue that jurisdiction under 28 U.S.C § 2201(a) is appropriate in this case and requests the court to declare the correct minimum payments due under the terms of the Loan Agreement, how much Plaintiffs should pay to recover title to the subject property, and the current principal balance owed by Plaintiffs.  Defendants assert that Plaintiffs have failed to plead a cause of action because declaratory relief is a remedy and not an independent cause of action.

---

[71]  Cal. Civ. Code § 3399.

[72]  *See Arreola v. Wells Fargo Home Mortg.*, Case No. 10-3272, 2011 WL 1205249, at *3 (E.D. Cal. Mar. 29, 2011) ("Reformation is not a standalone action and can be granted only where plaintiffs can demonstrate a valid cause of action justifying reformation"); *see also Landis v. Superior Court*, 232 Cal. App. 2d 548, 555 (1965) ("While sometimes referred to as a 'cause of action,' reformation is merely one of several remedies for a single wrong.").

Case No.: 12-04533 PSG
ORDER

Declaratory relief is a remedy that must be tied to another claim, such as breach of contract.[73]  Because it is a remedy and not a cause of action, Defendants' motion to dismiss the declaratory relief cause of action is GRANTED.  Nothing in this order prevents Plaintiffs from seeking declaratory relief as a remedy for a separate, cognizable claim.

### 10.     Unfair Business Practices Claim

Plaintiffs allege that Defendants violated California's Unfair Competition Law ("UCL") based on the other asserted claims in the FAC.[74]  Defendants contend that the UCL claim fails because Plaintiffs have not identified any prohibited practice, act or behavior that constitutes a violation of UCL with sufficient particularity to support a claim.  Defendants further argue the claim is barred by the four-year statute of limitations.[75]

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."[76]  A UCL claim is "derivative of some other illegal conduct or fraud committed by a defendant, and [a] plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation."[77]  "A complaint based on an unfair business practice may be predicated on a single act; the statute does not require a pattern of unlawful conduct."[78]

---

[73]  *See Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010); *see also Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010).

[74]  *See* Docket No. 61.

[75]  Cal. Bus. & Prof. Code § 17208.

[76]  *Id.* at § 17200.

[77]  *Benham v. Aurora Loan Servs.*, Case No. 09-2059, 2009 WL 2880232, at *4 (N.D. Cal. Sept. 1, 2009).

[78]  *Brewer v. Indymac Bank,* 609 F. Supp. 2d 1104, 1122 (E.D. Cal. 2009).

20

Case No.: 12-04533 PSG
ORDER

As noted above, Plaintiffs' other claims do not survive the present motion to dismiss. Absent a cause of action to support the UCL claim, the claim fails.  Defendants' motion to dismiss the unfair business practices claim is GRANTED with leave to amend.

## IV.    CONCLUSION

Defendants' motion to dismiss Plaintiffs' FAC is GRANTED with leave to amend the claims of quiet title, TILA, fraud, breach of contract, breach of implied contract, and UCL, as discussed above.

In this case, Plaintiffs have filed a temporary restraining order, preliminary injunction, complaint, and first amended complaint.  The court has addressed these issues in turn, despite Plaintiffs acknowledging that the complaint on file is not a "model of clarity" and seeking leave to withdraw claims and edit their complaint not once, but twice.  Under these circumstances, the court could reasonably conclude that any further amendment would be futile.  Nevertheless, out of an abundance of caution, Plaintiffs shall have one last opportunity to amend their complaint as permitted above, to be filed no later than May 3, 2013.


**IT IS SO ORDERED.**

Dated: April 22, 2013

_____

PAUL S. GREWAL
United States Magistrate Judge

21

Case No.: 12-04533 PSG
ORDER